Our last case this morning is Annette Hurley v. Secretary of Veterans Affairs, 2024-1387. Mr. Davis. Thank you, your honor. May it please the court. Your honor, my primary focus today is going to be on the language and context of the rule for willful misconduct and how that language and context demonstrates that the VA enacted a punitive measure aimed at punishing conduct that merited a dishonorable discharge. This is why the relevant probable consequences are those probable consequences of a dishonorable discharge. And this is also why, similar to other punitive measures, there's an element of immoral intent in the standard. Time for minutes. Counsel, why shouldn't we remand this because the regulations have changed? I think the regulations at issue in this case have not changed, your honor. This case involves the definition for willful misconduct, which was not changed last year when the VA changed the standard for willful and persistent misconduct. In fact, in the... Counsel, does the amended version of 38 CFR section 3.12 apply to Ms. Hurley's application for benefits? If the case were remanded, my understanding is she would have the benefit of the doubt as to the two different standards, so she could have either one applied, whichever would be better for her. Well, do you want to win an argument, or do you want to benefit the client? If she gets the benefit of another compelling circumstances exception, why isn't that to her benefit? I think it's not to her benefit because, one, there are elements of the new standard that are more difficult. The part of persistence is more difficult. Also, to fully win on character of discharge and get benefits all the way back to her date of onset, she may need to win under the old standard. I didn't get into too much depth on it in the briefing, but the way the VA processes character of discharge cases is also incredibly complex, and normally what they do is they actually, even when you win on character of discharge, you have to submit a new claim. So she's not necessarily... If the case were remanded and she wins, even under the VA standard practice, she would then normally have to file a new claim. So I don't think she's actually benefited by simply obtaining a remand. I do think in cases like the SKF case, this court has looked at its discretion to remand and has indicated when there's sort of, even though Chevron's no longer good law, when there's some sort of interpretation that's necessary by the court, that's not necessarily a reason to... The case may not be appropriate to remand, and in this case... What relief are you seeking from us? We're suggesting that remand might be an option. What relief are you seeking? We don't object to a remand. However, we do believe that the court should construe the standard for willful misconduct in 38 CFR 3.1N. I do believe that that is a specific definition in the VA's recent rulemaking change. It specifically noted that that existing definition continued to apply. And I do believe that that standard does target the probable consequences of a dishonorable discharge. And you can see that in the Garvey case, this court indicated that while the standard, the VA's discretion in this area comes from the discretion to describe a discharge under dishonorable conditions. And in the Garvey case, this court indicated that it's not the exact same as a dishonorable discharge, but that that core concept was well known and indicates that it does link to a dishonorable discharge. And so, when the VA is defining disregard for the probable consequences, it is talking about that nature of issue, misconduct that sort of is of that level. And you can see that in some of the other types of issues that create a bar. So, for example, mutiny, spying, these are all very severe standards of misconduct. Even an AWOL of 180 consecutive days doesn't necessarily create a bar to benefit. It can be excused by compelling circumstances. And so, you have the VA in its standard, or in this case, Congress, actually, for the AWOL, in the standard, clearly indicating a desire to select the correct measure of punishment for the offense. And we also see that because in the case of injuries that come from willful misconduct, there's approximate cause link. So, even if you commit willful misconduct, it has to approximately cause the specific injury. And in the case of even a fully dishonorable discharge will not necessarily create a bar to benefits because if the person was insane at the time of the misconduct, the bar doesn't apply. So, in this way, you have a clear standard that's aimed at punishing a certain level of misconduct, and that's the probable consequences they're looking at is the probable consequence of a dishonorable discharge or at least something of a comparable level of severity. It's something that truly deserves that level of punishment. Can I ask you this question? So, this language of knowledge of or wanton and reckless disregard of its probable consequences, I understand how central or important, intuitively sensible that is in the which is not this context, not character of discharge, but in the willful misconduct where the question is whether the injury that you're complaining about was the result of that. And so, questions about getting drunk and deliberateness of that where you're talking about the probable consequences being the physical consequences of the act taken. Are there, have we or the Veterans Court talked about probable consequences to mean legal consequences? That is predicting what a legal decision-maker would decide. It seems a different kind of thing from the normal disability. I do believe it is a different kind of inquiry. I think it's a similar inquiry. I think the VA has indicated that it's the same rough standard. I don't know. I think it is a factual analysis in the sense of what the punishment deserved, what punishment was deserved, such as guilt or innocence or did your conduct rise to that level. And, Your Honor, you mentioned the standard on intoxication. And I think, you know, this, I think there are a couple examples of the specific rules on willful misconduct in the context of injury in 38 CFR 3.301 C2. It talks about the intoxicating beverages. And there is a proximate cause part of that. But there's also a requirement of that it's drinking to enjoy the intoxicating effect and then an injury that comes after that. So they clearly are looking at punishing not drinking to celebrate a wedding, not drinking socially. There is a clear intent element of enjoying the intoxicating effect. In this case, intoxication means the loss of control and approximate cause after that. So I do think it's, you know, in the case of the probable consequences, that is a similar inquiry of are you risking getting punished by dishonorable discharge? Is it in that realm of punishment? And it would be, I think it is an inquiry that a court or judicial decision maker would be in a position to make because it can look at the severity of the misconduct, how it actually was handled, how the person risked whatever happened. I would say in a lot of cases, there is no risk of a dishonorable discharge. There is no risk, I don't want to get into the facts, but there are certain types of misconduct for which there is no risk that a person is ever going to be prosecuted through a general court martial and receive a dishonorable discharge. And that is the intent of the rule, the legislative history we cited, and it's also cited in Garvey. The intent of the rule was to capture people who were supposed to get a dishonorable discharge but did not. I'd also like, in transitioning a little bit to immoral intent. Can I just ask this? So on appendix page 19, this is near-ish, sort of in the middle of the Veterans Court decision, page 13 of the original type script. The Veterans Court says that the board found that, quote, some of the offenses committed by your client during the service were punishable at court martial by imprisonment and the issuance of a punitive discharge. You have not contested that here, is that right? That is a factual issue. Almost every offense under the UCMJ could potentially result in a punitive discharge. A court martial actually is a court martial that's reserved for minor misconduct. It's a summary court martial. So, no, we have not contested that some of the offenses could have been punished in that way. The issue is, would they have been punished that way? Is it likely? And was she reckless as to that responsibility? And just to try to return to the question I asked you before about the oddity, I'm just going to use that term, of a probable consequences inquiry being something about a probable reaction of a legal decision-maker as opposed to the probable physical consequences. What case law is there that talks about the use of that kind of terminology where a consequence is a prediction of a legal decision-maker's decision? In terms of a legal decision-maker's decision, I'm not familiar with any case law, but it does talk about the consequence of the factual occurrence. In this case, there is a factual occurrence of whether you would receive a dishonorable discharge. That is a event that would happen or not happen. That is a determination that would be made. My understanding of those kind of determinations is that they are factual determinations. You receive a dishonorable discharge. Your misconduct is punished in that measure. You receive a one-year sentence. You receive a felony conviction. You are found guilty. The law is applied to find that fact, but it is a factual determination in terms of the appropriate level of punishment. And, Your Honor? If you're into your rebuttal, you can continue if you wish, or I'll save it, of a combination thereof. I would like to do two quick points, Your Honor. So my first point would be that I think I don't think I've touched enough on the moral intent requirement of the standard. There is a clear requirement for moral intent. One of the ways that's shown is on the history of the standard for venereal disease as a piece of willful misconduct. If you look back at the 1931 Attorney General decision or guidance, the Attorney General indicated that in trying to look at what the standard meant, he found two ways that produced light on it. One was an injury to avoid military service, clear intent. The other was venereal disease. If we think back on where morality might have been 100 years ago, we can kind of understand the intent that was being punished. Similarly, in the section of 38 CFR 3.65 cited by the Secretary, at that point it was already changing to not consider venereal diseases willful misconduct. And at that point, the Secretary indicated that if the person was required to report it, they would have to show that it was actually innocent intent that had created the venereal disease. And now if you look at the venereal disease, it's not a moral intent because it's not willful misconduct because that intent, the conception of intent, has changed. Thank you. And we'll save the remainder of your time. Mr. Golden. Good morning. Thank you, Your Honor. May it please the Court. I start by just addressing some of the questions the Court had for Appellant's counsel, beginning with the question about whether the regs have changed, whether a remand is appropriate in this case. And the regs have changed. I mean, 3.12 has had a new issue come out, a new version last year, effective in, I believe, July of last year at this point. That regulation, and this is on a federal regulation, I believe it's 89. He can choose how to represent his counsel. And if he thinks remand for the benefit of the new regulation is less advantageous than winning on his issue, that's his choice, right? That is his choice. He can choose how to present his case as he wants. We're just answering the question as to whether or not the new regulations apply in this case. And when the new rule came out, we just pointed the Court to 89 Fed Reg 32361, which states that this rule applies to any case pending before the United States Court of Appeals for the federal circuit. So it does apply to this case. Okay. Can I just ask? I mean, it seems to me there's one possibility is remand without deciding the issues he's presented. A second possibility is decide the issues he's presented and then remand for any change. And so there are two different kinds of remands. But it seems to me at least one question I would like to know, to the extent that you can state your position on this, I'd be most interested. Suppose that Ms. Hurley does or could prevail under the new circumstances test. Would that be retroactive to the date of her current claim? Or is that going to be limited in some way, either by a requirement of filing a new claim? That doesn't seem quite right under the language of the new regulations saying it applies to cases that are pending here in the federal circuit. But under statute 38 AC 5110, would this be a situation where there's been a liberalizing change in law so that the date with the date of actual benefits could be adversely affected? Yes, Your Honor. First of all, just to clarify, so in both of those scenarios, the court is remanding the case rather than just affirming and therefore dismissing the appeal because that has a third possible consequence in terms of potential effective dates. And then presumably there would be a new claim. Exactly. So in that scenario where there's a new claim, of course, under she could try and bring a claim to you, as her point out, she could try and relate it back to the prior claim, but I'm not certain whether that would be possible if there was a final decision. And in that situation, if she's arguing for liberalizing law, the statute precludes her to either the date of the liberalizing law or one year before the claim is brought. At this point, it would be one year before because we've been more than a year. Right. So address the situation of remand even after we decide, let's just by assumption reject the current challenges, but remand, so it's still the same claim. Yes. Would, if she prevailed under the new regulation on that claim, would the benefits go back to the date of that claim or any later date when the onset of the issue? I believe because the claim was pending, they'd go back to at least the date that the new law came into effect, the liberalizing date of the law. The VA would have to, of course, look at the effective date question, which is the fifth element downstream and make a decision. If the VA determined the facts existed to put the effective date before that, well, as this court's well aware, the government has limited abilities to appeal a decision of the VA that goes in the favor of the veteran. So the VA would have to look at that, decide whether this law requires it to stop. Just to make sure that we're meeting, did you understand? My reaction to that is you just avoided the question and that means she's entitled to have this decision because she cannot count under what you just said on keeping her current effective date. I can't stand here and bind the VA's decision on what they'll do on the effective date. Okay. So as long as there's uncertainty, then there's truly a potential risk of our not answering the current question. There's a risk in some ways, but at the same time, Your Honor, the question would then be back before this court in that remand scenario regarding this issue. If this happens where we have the exact same question come up, if the VA has determined that there is a character of service issue as of a certain date. We don't know if the VA may determine there is none at this point. They may determine a 3.12D's change has had an effect where it now has no character of discharge issue with Ms. Hurley's claim, in which case for the issue of how do we apply willful and persistent misconduct, which she would no longer have standing because she no longer have an adverse decision against her on that issue and it would be in judicial efficiency. The reason we're, I mean, the government could be standing here saying we want affirmation and not asking, we're the party asking for the remand, not the Appellant's counsel. And part of the reason of that is, as I mentioned, if her claim is remanded, she has the continuous claim. She can at least look back to the date that the law went into place, which is more than a year from even if the court issued this order today affirming she could at most get a year. We're talking at this point 12 months versus 15 months, that gap may grab, it may not seem like a lot, but we want to get, if she can get benefits, we want to get her the maximum she can. And that's simply why we want remand first, affirmation second. But with that said, I think I would move on to some of the other questions the court had for Appellant's counsel just to address them. She would not need to file a new claim if this case was remanded, as the Appellant's counsel said she might have to, it would be a continuous claim. She would potentially have to explain and present arguments as to why she believes the compelling circumstances that now exist applies to her case. But that would be the party, even if she had not been remanded, and she's still before the VA when this case came out. I think we've addressed whether 3.12 applies to confirm an appendix 14. On page 14 of the appendix, you can see that the Veterans Court is applying 3.12 to her case. So 3.12 is the applicable law as to what's happening in this case. I do want to just point out, the arguments we heard on opening discussion regarding whether or not 3.12 and 3.1n are punitive in some ways, I don't believe these arguments were presented in the briefs. I don't believe they've been presented to the courts below. To that extent, we would argue that they're waived. We've certainly not been preparing to discuss the punitive nature. And in any event, we would reject that argument. The language of the statute is clear. And as the court has found in the Garvey case and other cases, 3.1n allows the average person full understanding as to what will be applied to them if they engage in willful and persistent misconduct. So we don't see a punitive nature here, nor do we see an argument in the briefs regarding Chevron. Chevron was not cited in the brief, nor was Loper Bright. As far as I can tell, and I apologize if that's not correct, and as for the arguments regarding other sections that talk about willful misconduct, that bring in questions about is there an approximate injury, is there a insanity, these are specific exceptions and extra requirements written into other parts of the code. They don't exist in the code that we're concerned with in this case. The insanity does apply. The courts below took factual findings on that. But what the briefs argued for, was essentially what is now the compelling circumstance exception, the new 3.12e that couldn't be applied before and can be applied now. The request that she be found not to have committed willful and persistent misconduct because she was doing so in response to harassment, abuse, duress, coercion, those words were not in the regulations until July of last year. And now they are. And we'd like a chance to basically consider that and see if we can find an opportunity to, where the VA has the duty to assist when it has these sort of situations and try to assist as it can. I'd also like to talk, Judge Toronto, you had a question regarding do the possible consequences have to be criminal in some sense, or do they have to be? No, no, no, no. Right. I'm not quite sure what you mean by criminal. In the 38 U.C. 105, whether the injury that you have followed from willful misconduct, the consequence that's being examined is a physical consequence of the act. This doesn't seem to be that. This seems to be about whether a decision-maker, initially the army, in deciding whether to court-martial you, whether to discharge you, what the terms of the discharge, what the probable action, which a legal decision-maker would be. That's a, it's an odd fit. And so I don't think I've ever thought about that idea before. So I'm trying to get some understanding of what history there is of that application of the probable consequences. Well, I think one thing we could direct the court's attention to is the McFarlane v. Shinzeki case. That's 446 Fed Appendix 287 from this court in 2011. This case involved a military person who was driving over the speed limit on the wrong side of the road and was found, I don't believe it was under 3.12, but they were found to have willful misconduct. And the court, this court in that case talked about this malum per se and this malum prohibitum. These are the two concepts that are captured by the willful misconduct 3.1n, conscious wrongdoing, unknown prohibited action. And that's the case. I mean, just as you're describing it, it's self-evident what probable consequences, physical consequences, might be of that. What's the counterpart to that here? Being rude to commanding officers, not showing up for a particular military duty? Well, exactly, Your Honor. Multiple times. So on Appendix 147 through 151 is the charges that and Ms. Hurley. And they involve three counts of failing to go to a place of duty. They involve three counts of disobeying orders and three counts of disrespectful language. And I won't repeat the language, but it's available on those appendix pages. And the board noted this was not to a single person. As we've noted, she claims that she was responding to abuse and harassment from a single individual. We'd like to consider that on remand. But to multiple persons, she made these statements and disobeyed these orders. And in that situation, as this court, well, as the claims court that predated this court and was then later cited by the Supreme Court in the Parker v. Levy case from 1974, in Justice Blackmun's concurrence, there is a different standard applied in the military. And so in that case, Justice Blackmun citing and quoting from Fletcher of the United States from the claim court in 1891, states, we learn as law students in Blackstone, there are things which are malum in say, in addition to them, things which are merely malum prohibitum. It goes on to say, in military life, there is a higher code termed honor, which holds a society to stricter accountability and is not desirable to standard the army shall come down to the requirements of a criminal code. There are certain things which are maybe not immoral, maybe not evil, but are prohibited. And in the military, continually engaging in prohibited actions, knowingly with reckless disregard for the consequences, as I believe, counsel for the appellant mentioned, almost every offense in the military, if done in a certain way, could result in a punitive discharge. Reckless disregard does not require, in the statute, reckless disregard for a specific consequence, just reckless disregard for consequences, for probable consequences. Again, we point to the McFarland case as well as that Parker v. Levy case for more guidance on that. And regarding the moral intent question, just in general, I think we briefed this sufficiently. The language just simply doesn't exist. It could have. The army and the military could, the VA and Congress could have said it must be something done with evil intent. They didn't. And in that extent, the fact that they included malum prohibitum, we would argue means they did not require any sort of specific evil intent. I believe I've covered all the points I wish to make in front of this court, unless the court has any further questions at this point. So just to wrap up, you are proposing just a vacant remand given the new law. Are you saying we should or should not weigh in on the question they want us to weigh in on? We do. We believe judicial efficiency and judicial restraint suggests not weighing in. For one thing, the statute has changed. And does that make a difference in how we apply it? The VA hasn't had a chance to look at that. The Veterans Court hasn't had a chance to look at that. For this court's information, there are two, and obviously the Veterans Court cases are not binding on this court. There are two situations where the Veterans Court has had a 3.12 case come before it within the last year. And in both situations, the Veterans Court has remanded for the VA to consider it because we need to understand how the ROs, how the VA personnel are going to apply these laws. Those are Bowman v. Collins. I have the Westlaw citation 2025 WL 2374116 in that situation. Well, there are other reasons for remand. The Veterans Court noted that the VA has amended the regulation applicable to all Kane's planning before the VA, this court, or the Court of Appeals Federal Circuit, including the compelling circumstances, and remanded for the VA to consider. And that was from August. That was just from, I think, three weeks ago. From February of this year, Kane v. Collins 2025 WL 615138 similarly noted that there was a lack of detail in the board's decision, but also that 3.12 has been updated, and it was the board to consider both of those on remand. So we think that this court should consider allowing the VA, allowing the Court of Veterans Claims to build an understanding of what these new terms mean. And then, if there is still an issue to be decided on this level, at that point, it would make sense. Our primary request is for a remand. To the extent the court wants to address these issues, we think affirmance is necessary, because the language regarding evil intent simply just doesn't exist in this statute. Thank you very much. Mr. Davis, you have a little more than a minute to rebut. Thank you, Your Honor. First of all, we did raise the punitive measures in the brief. We mentioned specifically it was a punitive rule that it was looking at the punishment. Secondarily, the Secretary ignores the fact that wrongdoing or known prohibitive action is distinguished at first, and then the intent element only punishes deliberate or intentional wrongdoing, not deliberate or intentional wrongdoing or known prohibitive action. Wrongdoing has been defined as a malum in se, so that part of the standard only punishes, requires deliberate or intentional malum in se. That's a clear immoral intent requirement. It's in the attorney general opinions. Finally, Your Honor, I do think, you know, I don't think the context of judging probable consequences is that unusual in this context, because, for example, you could say someone was reckless as to the idea of getting caught speeding. You know, they're driving 80 in a 55. That is a fact that could be found, and so unless there are further questions, thank you. Thank you, counsel. The case is submitted. That concludes today's arguments.